UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-3396 JJO

UNITED STATES OF AMERICA

v.

TOMAS VALE VALDIVIA,

        Defendant.
_____/

## CRIMINAL COMPLAINT COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

                              Respectfully submitted,

                              ARIANA FAJARDO ORSHAN
                              UNITED STATES ATTORNEY

BY: _____
      Ignacio J. Vazquez, Jr.
      Assistant United States Attorney
      Florida Bar No. 16275
      99 N.E. 4th Street
      Miami, Florida 33132-2111
      Tel: (305) 961-9318
      Fax: (305) 579-7976
      ignacio.vazquez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TOMAS VALE VALDIVIA, | ) | Case No. 19-3396 JJO |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 1, 2013 to Present__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 1.) Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) | 1.) Conspiracy to encourage and induce an alien to come to, enter, and reside in the United States |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Aaron D. Spielvogel

☑ Continued on the attached sheet.

*Complainant's signature*

Aaron D. Spielvogel, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/19

*Judge's signature*

City and state: Miami, Florida          Hon. John J. O'Sullivan, U.S. Magistrate Judge
*Printed name and title*

## SEALED AFFIDAVIT

I, Aaron D. Spielvogel, being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since 2016. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Task Force, in the FBI Miami Division, where I am responsible for conducting investigations of transnational organized crime, regarding violations of federal laws, particularly those laws found in Titles 8, 18, 19 and 21 of the United States Code.

2. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided to me by other law enforcement officers and law enforcement support personnel. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include every fact known to me in connection with this investigation. I have only set forth the facts that I believe are necessary to establish probable cause that Tomas VALE VALDIVIA did knowingly conspire to encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), all in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

## PROBABLE CAUSE

3. In or around October 2013, two individuals, hereinafter referred to as ALIEN 1 and a Cuban baseball player, hereinafter referred to as PLAYER 1, left Cuba aboard a go-fast vessel with the ultimate destination being the United States. ALIEN 1 and PLAYER 1 were initially taken to Cancun, Mexico.

4. On or about October 21, 2013, associates of VALE VALDIVIA, hereinafter WITNESS 1 and ASSOCIATE 1, flew to Cancun, Mexico from the United States to meet with

ALIEN 1 and PLAYER 1. WITNESS 1 explained to ALIEN 1 and PLAYER 1 that PLAYER 1 would be required to pay twenty percent (20%) of his first contract with Major League Baseball (MLB) as payment for ALIEN 1 and PLAYER 1 having been smuggled out of Cuba.

5. In my training and experience in conducting human smuggling investigations, involving Cuban baseball players, Cuban baseball players are required by the human smuggling organization (HSO) to pay a considerable amount of money to have themselves and their family members smuggled out of Cuba and to the United States. The smuggling fees can range from approximately twenty percent (20%) to thirty percent (30%) of the Cuban baseball player's gross contract with MLB. These smuggling fees are usually paid via wire transfer to fictitious sports management companies and subsequently disbursed to the coconspirators.

6. On January 7, 2019, law enforcement interviewed WITNESS 1. WITNESS 1 stated that GEORGE FERRER SANCHEZ hired VALE VALDIVIA to smuggle ALIEN 1 and PLAYER 1 out of Cuba.[1] WITNESS 1 stated that FERRER SANCHEZ instructed WITNESS 1 to go to Cancun, Mexico in or around October 2013, with ASSOCIATE 1 to have PLAYER 1 sign a contract entitling FERRER SANCHEZ and VALE VALDIVIA to share twenty (20%) of PLAYER 1's contract with an MLB franchise. FERRER SANCHEZ further instructed WITNESS 1 to establish a Florida corporation to receive the payment of funds from PLAYER 1, which were to come from his initial contract with an MLB franchise. FERRER SANCHEZ and VALE VALDIVIA were to receive twenty (20%) of PLAYER's contract with an MLB franchise in exchange for their services, which included the extraction of PLAYER 1 and ALIEN 1 from

---

[1] George Ferrer Sanchez pled guilty on August 13, 2019 to conspiring to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). *See* Case No. 19-20085-CR-COOKE.

2

Cuba, with ultimate passage into the United States. A search of the Florida Division of Corporations revealed a corporation in the name of South Florida Sports Management & Consulting LLC was established in October 2013. The corporation showed WITNESS 1 and ASSOCIATE 1 as officers of the corporation.

7.  A search of Customs and Border Protection travel records revealed that WITNESS 1 and the ASSOCIATE 1 flew from Miami, Florida to Cancun, Mexico on flight AA1157 on October 21, 2013.

8.  WITNESS 1 further stated that, ultimately, FERRER SANCHEZ instructed PLAYER 1 to pay the first payment of several hundred-thousand dollars, by wiring the money to the business account of El Gigante Toca Sport.

9.  On April 2, 2014, ALIEN 1 applied for admission to enter the United States from Mexico at the B & M International Bridge Port of Entry in Brownsville, Texas presenting a Cuban passport and requesting asylum. ALIEN 1 was found to be inadmissible under the Immigration and Nationality Act. However, ALIEN 1 was able to enter the United States pursuant to the Cuban Adjustment Act. Pursuant to his entry into the United States on April 2, 2014, ALIEN 1 now resides in the Southern District of Florida.

10. On January 14, 2019, law enforcement interviewed ALIEN 1. ALIEN 1 stated that FERRER SANCHEZ told him that FERRER SANCHEZ and VALE VALDIVIA were responsible for smuggling ALIEN 1 and PLAYER 1 out of Cuba and eventually into the United States. ALIEN 1 stated he was smuggled out of Cuba by an individual with the alias "Erito" who ALIEN 1 stated worked for VALE VALDIVIA. ALIEN 1 stated he had a verbal contract with FERRER SANCHEZ, which paid FERRER SANCHEZ twenty (20%) of PLAYER's $27 million contract with an MLB franchise. ALIEN 1 reported that the twenty (20%) contract was

payment for having smuggled ALIEN 1 and PLAYER 1 out of Cuba and to the United States. ALIEN 1 stated he was instructed by FERRER SANCHEZ to send a $400,000 wire transfer to the account of El Gigante Toca Sport. ALIEN 1 further stated that FERRER SANCHEZ instructed ALIEN 1 to write checks to third parties as payment for the smuggling fees. ALIEN 1 reported that his payments to FERRER SANCHEZ occurred in the Southern District of Florida.

11. An analysis of El Gigante Toca Sport's bank accounts revealed two payments: (1) Check No. 1094 dated August 30, 2014 in the amount of $160,000, and (2) a wire transfer on November 19, 2014 in the amount of $400,000, from PLAYER 1 to El Gigante Toca Sports for a total of $560,000.

12. On January 31, 2019, law enforcement interviewed WITNESS 2. WITNESS 2 stated that he was asked by FERRER SANCHEZ to use his (WITNESS 2) bank account to receive money from PLAYER 1. WITNESS 2 stated that he understood that the money being received from PLAYER 1 was payment for the smuggling of PLAYER 1 out of Cuba. WITNESS 2 stated that he was instructed by FERRER SANCHEZ to issue checks and wire transfers to third parties. WITNESS 2 stated that he was instructed by FERRER SANCHEZ to issue a wire transfer and check to the account of Jumi Investments.

13. An analysis of the El Gigante Toca Sports bank account revealed that on December 1, 2014, a bank wire transfer in the amount of $80,000 was sent from the account of El Gigante Toca Sports to the account of Jumi Investments. The analysis also revealed that the account of El Gigante Toca Sports issued check no. 1082 to Jumi Investments on December 12, 2014, in the amount of $41,000.

14. An analysis of the Jumi Investments bank account revealed that on December 9, 2014, Jumi Investments issued three bank checks: (1) Check No. 1001 in the amount of $9,500

to RELATIVE 1, (2) Check No. 1002 in the amount of $5,000 to RELATIVE 2, and (3) Check No. 1003 in the amount of $9,500 to RELATIVE 3.

15. On March 27, 2019, RELATIVE 1 was interviewed by law enforcement. RELATIVE 1 was shown copies of the checks written from the Jumi Investments' bank account, including the check that was addressed to RELATIVE 1, RELATIVE 2, and RELATIVE 3. RELATIVE 1 identified himself, as well as RELATIVE 2 and RELATIVE 3 as relatives of VALE VALDIVIA. RELATIVE 1 stated that the checks were cashed and the money was sent to VALE VALDIVIA.

16. On June 24, 2019, WITNESS 3 was interviewed by law enforcement. WITNESS 3 stated she was formally married to CO-CONSPIRATOR 1. WITNESS 3 stated that CO-CONSPIRATOR 1 had opened the company, Jumi Investments, to purchase investment properties. WITNESS 3 stated that CO-CONSPIRATOR 1 was asked by FERRER SANCHEZ to use the bank account associated with Jumi Investments, to receive money from a baseball player. WITNESS 3 stated that VALE VALDIVIA, FERRER SANCHEZ, and CO-CONSPIRATOR 1 were criminal associates. WITNESS 3 stated that CO-CONSPIRATOR 1 worked for FERRER SANCHEZ in Miami, and later traveled to Isla Mujeres, Mexico, to work on boats for VALE VALDIVIA.

17. On or about August 8, 2019, another Cuban baseball player, hereinafter referred to as PLAYER 2, was interviewed by law enforcement. VALE VALDIVIA was also involved in smuggling PLAYER 2 out of Cuba. PLAYER 2 advised that VALE VALDIVIA told PLAYER 2 that he had smuggled PLAYER 1 out of Cuba.

18. On or about August 21, 2018, ALIEN 2 was interviewed by law enforcement. VALE VALDIVIA was involved in smuggling ALIEN 2 out of Cuba. ALIEN 2 stated that VALE VALDIVIA told ALIEN 2 that he had smuggled PLAYER 1 out of Cuba.

19. Based upon the aforementioned information, there is probable cause to believe that Tomas VALE VALDIVIA did knowingly conspire to encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), all in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Aaron D. Spielvogel
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this ___ day of August 2019.

_____
HON. JOHN J. O'SULLIVAN
UNITED STATES DISTRICT MAGISTRATE JUDGE